
$400.00


ER

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUCKEYE PENNSAUKEN TERMINAL LLC,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　　-against-<br><br>DOMINIQUE TRADING CORP., PLEIADES SHIPPING AGENTS SA and the M/V VOIDOMATIS, her tackle, engines, etc. *in rem*,<br><br>　　　　　　　　　　　Defendants. | CIVIL MATTER<br><br>NO.<br><br>**14　4625** |

## COMPLAINT IN ADMIRALTY

Plaintiff, BUCKEYE PENNSAUKEN TERMINAL LLC ("Plaintiff" or "Buckeye"), by its attorneys, Blank Rome LLP, complaining of the above-named defendants, alleges:

1. This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. At all material times, Plaintiff Buckeye was and now is a company organized and existing under the laws of New Jersey with an office and place of business at 123 Derousse Ave., Pennsauken, NJ.

3. At all material times, Plaintiff Buckeye was the owner and operator of Buckeye Pennsauken Terminal, Dock 2 ("the Dock"), located at 123 Derousse Ave., Pennsauken, NJ.

4. Defendant Dominique Trading Corp. ("Dominique") is, on information and belief, a company organized and existing under the laws of Greece, and is the registered owner of the M/T

VOIDOMATIS, as indicated by the Equasis Vessel Summary attached to this Verified Complaint as Exhibit A and incorporated herein by reference.

5. Defendant Pleiades Shipping Agents SA ("Pleiades") is, on information and belief, a company organized and exiting under the laws of Greece, and is the operator and manager of the M/V VOIDOMATIS, as indicated by Exhibit A.

6. Defendant M/V VOIDOMATIS (the "Vessel") (IMO No. 9298973) is, upon information and belief, a Liberian-flagged vessel owned by Defendant Dominique and operated by Defendant Pleiades, as indicated by Exhibit A. On information and belief, the Vessel is now, or during the pendency of this action, will be within this district and will be arrested pursuant to process of this Court.

## VENUE AND JURISDICTION

7. The Court has *in rem* jurisdiction over the Vessel because it is currently within this jurisdiction or is expected to be in this district during the pendency of this action.

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333 and Fed. R. Civ. P. 9(h).

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## NATURE OF THE ACTION

10. This tort action is brought against Dominique and Pleiades, *in personam*, and against the M/T VOIDOMATIS, its engines, tackle, equipment, machinery, gear, furniture, apparel, appurtenances, etc., *in rem* to recover damages occurring when the Vessel allided with the Dock, which is part of a terminal owned, maintained and operated by Buckeye.

## THE FACTS

11. Plaintiff is a terminal which facilitates the distribution of refined petroleum products to clients worldwide, through the use of ocean going vessels. The Dock is a vital part of

Plaintiff's terminal operations, as it facilitates the loading and discharge of oil by larger vessels and ocean-going barges, many of which cannot call at the facility's other docks. The Dock is where most of Plaintiff's oil resupply business is performed.

12. On August 5, 2014, at 8:07 a.m., the Vessel, accompanied by two tugboats, was attempting to turn to prepare to tie-up to the Dock to conduct discharge operations, when it allided with the Dock.

13. At the time of the allision, it was daylight and the prevailing weather conditions were good.

14. Immediately following the allision, the Vessel departed the area and proceeded to an anchorage at Marcus Hook, Pennsylvania.

15. The United States Coast Guard was informed of the allision, and has ordered the Vessel to remain at Marcus Hook until sometime in the morning of August 6, 2014, at the earliest.

16. Following the allision, Plaintiff and its surveyors inspected the damage. The Dock will be necessarily taken out of service and will be unusable while repairs are being performed. Initial estimates value the damage and cost of repairs at $5 million USD.

17. Consequently, because of Defendants' conduct and/or the unseaworthiness of the Vessel, Plaintiffs have and will continue to suffer damage from loss of use and/or loss of profits, as well as other extraordinary operating costs and expenses associated with the repairs and downtime, which Plaintiff estimates to be $14 million USD.

18. The allision and the proximately resulting damages were caused solely by, and due wholly to, the negligence, navigational error and fault of the Defendants, its agents, servants and employees, acting in the course and scope of their agency or employment, and the negligence,

navigational error, fault and unseaworthiness of the Vessel, committed while such Vessel was operating upon the high seas.

### FIRST CAUSE OF ACTION - NEGLIGENCE

19. The foregoing allegations are incorporated by reference. The aforesaid allision and resulting damages were not caused nor contributed by any action or inaction on the part of Plaintiff. At the time of the incident, the Dock was positioned and stationary.

20. The allision and resulting damages were due solely to the fault and the negligent acts of the Defendants and the Vessel in the following respects, each one of which acts of negligence, acting alone or in conjunction with the others, was a proximate cause of the allision and the damages suffered by Plaintiff:

   a. The Vessel was not manned with a competent captain and crew;
   b. The Vessel, her master, and crew failed to keep a proper lookout;
   c. Those in charge of the Vessel, including but not limited to the officers and crew, were inattentive in their duties;
   d. The Vessel was proceeding at an immoderate rate of speed under the circumstances and conditions;
   e. The Vessel failed to turn off the autopilot and stop and reverse her engines when danger of collision was, or should have been, apparent;
   f. The Vessel's controls incurred mechanical failure;
   g. The Vessel's captain and crew failed to use all available means appropriate in the prevailing circumstances to determine and avoid the risk of allision;
   h. The Vessel's captain and crew negligently and incompetently navigated and maneuvered the Vessel;
   i. The Vessel's captain and/or crew members on duty reacted too late in using the emergency controls for turning;
   j. The Vessel's captain and/or crew members on duty suffered from fatigue and high levels of stress;

k. The Vessel's captain and/or crew members on duty were intoxicated or otherwise impaired when the allision occurred;

l. The Vessel's captain and/or crew members were not properly trained;

m. The Vessel's captain and/or crew members were not properly supervised;

n. The Vessel's captain and/or crew members were not properly licensed;

o. The Vessel had missing and/or nonfunctioning navigational equipment;

p. Defendants' company policies and procedures were below standard and/or not followed by the captain and/or crew members;

q. The Defendants failed to properly formulate safety policies;

r. The Vessel lacked proper manuals and/or instructions;

s. Defendants did not properly train the crew in the operation and capacities of the Vessel and its navigational equipment;

t. The master and crew were inexperienced, which inexperience is imputable to the Defendants;

u. Defendants did not exercise due care in selecting the captain and/or crew and therefore should not have relied on their skill and expertise;

v. Defendants failed to follow established safety policies and procedures designed to prevent allisions such as the one that occurred in this case; and

w. The Vessel's captain and/or crew members disabled or failed to use safety equipment aboard the Vessel designed to prevent allisions such as the one that occurred in this case.

### SECOND CAUSE OF ACTION – THE VESSEL WAS UNSEAWORTHY

21. The foregoing allegations are incorporated by reference. In addition to those allegations, or in the alternative, the Vessel, owned, operated and controlled by Defendants, was unseaworthy and as a result, she struck and damaged the Dock. The Vessel was unseaworthy in the following respects:

a. The Vessel was not manned with a competent captain and crew;

b. The Vessel, her master, and crew failed to keep a proper lookout;

c. Those in charge of the Vessel, including but not limited to the officers and crew, were inattentive in their duties;

d. The Vessel was proceeding at an immoderate rate of speed under the circumstances and conditions;

e. The Vessel failed to turn off the autopilot and stop and reverse her engines when danger of collision was, or should have been, apparent;

f. The Vessel's controls incurred mechanical failure;

g. The Vessel's captain and crew failed to use all available means appropriate in the prevailing circumstances to determine and avoid the risk of allision;

h. The Vessel's captain and crew negligently and incompetently navigated and maneuvered the Vessel;

i. The Vessel's captain and/or crew members on duty reacted too late in using the emergency controls for turning;

j. The Vessel's captain and/or crew members on duty suffered from fatigue and high levels of stress;

k. The Vessel's captain and/or crew members on duty were intoxicated or otherwise impaired when the allision occurred;

l. The Vessel's captain and/or crew members were not properly trained;

m. The Vessel's captain and/or crew members were not properly supervised;

n. The Vessel's captain and/or crew members were not properly licensed;

o. The Vessel had missing and/or nonfunctioning navigational equipment;

p. Defendants' company policies and procedures were below standard and/or not followed by the captain and/or crew members;

q. The Defendants failed to properly formulate safety policies;

r. The Vessel lacked proper manuals and/or instructions;

s. Defendants did not properly train the crew in the operation and capacities of the Vessel and its navigational equipment;

t. The master and crew were inexperienced, which inexperience is imputable to the Defendants;

u. Defendants did not exercise due care in selecting the captain and/or crew and therefore should not have relied on their skill and expertise;

v. Defendants failed to follow established safety policies and procedures designed to prevent allisions such as the one that occurred in this case; and

w. The Vessel's captain and/or crew members disabled or failed to use safety equipment aboard the Vessel designed to prevent allisions such as the one that occurred in this case.

22. Defendants were aware, or had privity of knowledge of the unseaworthy condition of the Vessel and of such other faults and negligence as specified herein or as will be proved at the trial of this case.

## DAMAGES

23. As a result of the foregoing acts, omissions and negligence, Plaintiff has and will suffer damages including the costs and expenses to make temporary and permanent repairs to the Dock; loss of use; loss of profits; extraordinary operating costs; costs of surveyors; costs of engineers; cost of insurance; cost of any recertification; pre-judgment and post-judgment interest; and attorneys' fees. Plaintiff seeks these damages and all other general and equitable relief this Court deems appropriate. Plaintiff reserves the right to amend and supplement this paragraph of its Original Complaint to allege other and further damage as may become known.

## CONCLUSION

**WHEREFORE**, Plaintiff prays:

A. That Plaintiff have judgment in the amount of $19 million USD, subject to amendment, together with interest continuing to accrue at the rate of 2% per month until the amount owing is paid in full, and together with Plaintiff's costs and disbursements incurred herein, including costs of *custodia legis*; and

B. That process *in rem*, the Original Complaint and Warrant for Arrest, pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims be issued against Defendant M/V VOIDOMATIS, her tackle, engines, etc., and served

upon the Master or other ranking officer or caretaker of the Vessel, placing the Vessel under the arrest, custody and control of the Marshal of this district;

C. That process issue against Defendants Dominique and Pleiades, citing them to appear and answer;

D. That the Defendant M/V VOIDOMATIS, her tackle, engines, apparel, furniture and equipment and all other appurtenances and additions, improvements, and replacements belonging thereto, be condemned and sold to pay the judgment entered herein, including interest then accrued and all costs and disbursements due Plaintiff herein, including costs of *custodia legis*;

E. That Plaintiff may have such other and further relief as the Court deems just and proper.

DATED this 6th day of August, 2014.

BLANK ROME LLP

_____
James J. Quinlan
Quinlan@blankrome.com
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

*Attorneys for Plaintiff Buckeye Pennsauken Terminal LLC*

## VERIFICATION

I, James J. Quinlan, state under penalty of perjury that I am an attorney with the Firm of Blank Rome LLP, counsel for Plaintiff Buckeye Pennsauken Terminal, LLC, that I am authorized to make this Affidavit on the Plaintiff's behalf, that I have read the foregoing Complaint and hereby verify that the contents thereof are true and correct to the best of my information and belief, which is based on reports, records and conversations with representatives of the Plaintiff, and that I am making this Verification on the Plaintiff's behalf because the Plaintiff is not present in this district, and is unable to make timely verification.

JAMES J. QUINLAN

# EXHIBIT A



# Equasis - Ship folder
# VOIDOMATIS
*imo: 9298973*

## • Disclaimers

Neither Equasis nor its officers or employees shall be under any liability or responsibility whatsoever regarding the data displayed on this site, including hyperlinks or printing. Whist Equasis will make every effort to provide accurate information, it does not rule out the possibility of inadvertent omissions or inaccuracies.

Neither Equasis nor its officers or employees accept any responsibility and shall not be liable for any loss to any person caused by or arising from any information displayed on this site.

Only factual information is displayed in Equasis. Information does not undergo any changes by Equasis. Special attention has been paid to the accuracy of the data. Data is regularly updated in order to help ensure that information remains as reliable as possible. The frequency of updates varies from provider to provider.

No part of the information contained in or from the Equasis website may be stored in a retrieval system, or transmitted in any form, or by any means without prior permission in writing from Equasis.

The following actions are forbidden:
  • Bulk-downloading of data contained on the site ;
  • Use of downloaded data for financial gain ;
  • Use of a robot or similar remote device to download large batches of data.

The above list is not exhaustive, and it should be noted that Equasis continually monitors the activity on its website and if misuse is detected, then the user's account can be locked without prior notice.

## Ship informations

### • Ship particulars

|  | Information | Since |
|---|---|---|
| IMO number : | 9298973 | |
| Name of ship : | VOIDOMATIS | (since 01/03/2005) |
| Call sign : | A8FX2 | |
| MMSI : | 636012508 | |
| Gross tonnage : | 35711 | (since 01/03/2005) |
| DWT : | 61325 | |
| Type of ship : | Crude Oil Tanker | (since 01/03/2005) |
| Year of build : | 2005 | |
| Flag : | Liberia | (since 01/03/2005) |
| Status of ship : | In Service/Commission | (since 31/03/2005) |
| Last update : | 05/08/2014 | |

## • Management detail

| IMO | Role | Name of company | Address | Date of effect |
|---|---|---|---|---|
| 0084171 | ISM Manager | PLEIADES SHIPPING AGENTS SA | 262, Kifisias Avenue, Kifisia, 145 62 Athens, Greece. | since 22/11/2005 |
| 0084171 | Ship manager | PLEIADES SHIPPING AGENTS SA | 262, Kifisias Avenue, Kifisia, 145 62 Athens, Greece. | since 31/03/2005 |
| 4099869 | Registered owner | DOMINIQUE TRADING CORP | Care of Pleiades Shipping Agents SA , 262, Kifisias Avenue, Kifisia, 145 62 Athens, Greece. | since 31/03/2005 |

## • Classification status

| Classification society | Date change status | Status | Reason |
|---|---|---|---|
| Lloyd's Register | since 30/03/2005 | Delivered | |
| Other | during 2005 | Not applicable | |

## • Classification surveys

| Classification society | Date survey | Date next survey |
|---|---|---|
| Lloyd's Register | 30/03/2010 | 29/03/2015 |

## • Safety management certificate

| Classification society | Date survey | Date expiry | Date of status | Status | Reason | Type |
|---|---|---|---|---|---|---|
| Nippon Kaiji Kyokai | 05/06/2010 | 04/06/2015 | | | | Convention |

## • P&I information

| Name of P&I insurer | Recorded on |
|---|---|
| Standard P&I Club per Charles Taylor & Co | 21/07/2014 |

- **Statement of condition assessment scheme**

Does the vessel have a statement of compliance ?    Not applicable

## Ship certification

- **Special certification**

• US Coast Guard QualShip 21

# Ship inspections

- ## List of port state control

| PSC organisation | Authority | Port of inspection | Date of report | Detention | Duration (days) | Number of deficiencies |
|---|---|---|---|---|---|---|
| Paris MoU | Netherlands | Rotterdam | 15/01/2014 | N | 0 | |
| Vina Del Mar MoU | Mexico | TAMPICO TAM | 15/11/2013 | N | 0 | |
| US Coast Guard | United States of America | Corpus Christi, Texas | 03/07/2013 | N | 0 | |
| Vina Del Mar MoU | Panama | BALBOA | 30/01/2013 | N | 0 | |
| US Coast Guard | United States of America | San Francisco, California | 05/06/2012 | N | 0 | |
| US Coast Guard | United States of America | Long Beach, California | 05/07/2011 | N | 0 | |
| Paris MoU | Canada | Vancouver | 08/11/2010 | N | 0 | |
| Tokyo MoU | | | 08/11/2010 | | | |
| US Coast Guard | United States of America | Houston, Texas | 17/07/2010 | N | 0 | |
| Paris MoU | United Kingdom | Fawley | 05/02/2010 | N | 0 | |
| US Coast Guard | United States of America | New Orleans, Louisiana | 21/06/2009 | N | 0 | |
| US Coast Guard | United States of America | Galveston | 10/06/2008 | N | 0 | |
| US Coast Guard | United States of America | San Francisco, California | 10/06/2007 | N | 0 | |
| US Coast Guard | United States of America | Long Beach, California | 20/07/2006 | N | 0 | |
| Tokyo MoU | | | 30/05/2006 | | | |
| US Coast Guard | United States of America | San Francisco, California | 14/01/2006 | N | 0 | |
| US Coast Guard | United States of America | New Orleans, Louisiana | 21/06/2005 | N | 0 | |

- **Privates inspections**
- Oil Companies International Marine Forum

# Ship history

### • Current and former name(s)

| Name of ship | Date of effect | Source |
|---|---|---|
| VOIDOMATIS | since 01/03/2005 | IHS Maritime |

### • Current and former flag(s)

| Flag | Date of effect | Source |
|---|---|---|
| Liberia | since 01/03/2005 | IHS Maritime |

### • Current and former classification status

| Classification society | Date of survey | Sources |
|---|---|---|
| Lloyd's Register | 30/03/2010 | Lloyd's Register |

### • Company

| Company | Role | Date of effect | Sources |
|---|---|---|---|
| PLEIADES SHIPPING AGENTS SA | ISM Manager | since 22/11/2005 | IHS Maritime |
| PLEIADES SHIPPING AGENTS SA | Ship manager | since 31/03/2005 | IHS Maritime |
| DOMINIQUE TRADING CORP | Registered owner | since 31/03/2005 | IHS Maritime |