```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


BUCKEYE PENNSAUKEN TERMINAL LLC,   :    CIVIL ACTION
                                   :    NO. 14-4625
        Plaintiff,                 :
                                   :
    v.                             :
                                   :
DOMINIQUE TRADING CORP., et al.,   :
                                   :
        Defendants.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          December 21, 2015

This case is brought pursuant to the Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333. Plaintiff Buckeye Pennsauken Terminal LLC ("Plaintiff" or "Buckeye") alleges that Defendant M/V Voidomatis (the "Vessel"), an ocean-going oil barge owned by Defendant Dominique Trading Corporation ("Dominique") and managed by Defendant Pleiades Shipping Agents S.A. ("Pleiades"), allided with Plaintiff's Dock 2, located on the Delaware River in Pennsauken, New Jersey, on August 5, 2014. See generally Compl., ECF No. 1. In the Complaint, Plaintiff alleges that Defendants' negligence and/or the Vessel's unseaworthiness caused damage to Plaintiff's Dock 2 of up to $19 million. Id. at 7.

Defendants now seek transfer of this action to the District of New Jersey under 28 U.S.C. § 1404(a) so that it can

be consolidated with two cases pending in that district. The New Jersey actions concern an "unrelated incident" that occurred on October 5, 2014, when another dock owned by Plaintiff, Dock 1, was struck and damaged by a barge being towed by a tugboat. Defs.' Mot. Transfer Venue 4, ECF No. 52. The tugboat owners and barge owners each filed separate lawsuits against Buckeye on the day of the incident under the Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501-30512, in the District of New Jersey, Camden Vicinage: In re Dann Towing Co. & Dann Ocean Towing, Inc., No. 15-1610, and In re BB&T Equipment Finance Corp. & Vane Line Bunkering, Inc., No. 15-2313. These matters have been consolidated under No. 15-1610.

Defendants claim that Plaintiff indicated in its discovery responses in the instant action that its claims for "loss of use / business interruption damages" and "costs incurred to mitigate economic losses" are "inextricably related to identical claims" made by Plaintiff in the New Jersey actions, Defs.' Mot. Transfer Venue 3, and concern "[t]he same $8 million" in all three cases, Defs.' Reply Br. 6, ECF No. 59. Therefore, according to Defendants, granting transfer would allow the District of New Jersey to consolidate this action with the others and "avoid[] concurrent identical litigation in two jurisdictions." Id. at 7. For the reasons that follow, the Court will deny Defendants' motion to transfer.

I. **PROCEDURAL HISTORY**

Immediately after the allision with Plaintiff's Dock 2 on August 5, 2014, the Vessel proceeded along the Delaware River to Marcus Hook Anchorage, where it anchored to await instruction concerning the delivery of its cargo and to assess damage to the Vessel. Defs.' Mot. Transfer Venue 2. The next day, on August 6, 2014, Plaintiff initiated this action by filing a Complaint in Admiralty in this Court. ECF No. 1. The Complaint claims in rem jurisdiction over the Vessel and in personam jurisdiction over the owner, Defendant Dominique, and manager, Defendant Pleiades. Id. at 2. Plaintiff brings the following claims against Defendants:

> Count 1: Negligence, in twenty-three enumerated respects--each of which proximately caused the allision and Plaintiff's damages--for dock repairs, loss of use, loss of profits, extraordinary operating costs, costs of surveyors, engineers, insurance, and recertification, as well as prejudgment and postjudgment interest and attorneys' fees.
>
> Count 2: The Vessel's unseaworthiness, in twenty-three enumerated respects, of which Defendant had knowledge, which caused the allision and Plaintiff's damages, for dock repairs, loss of use, loss of profits, extraordinary operating costs, costs of surveyors, engineers, insurance, and recertification, as well as prejudgment and postjudgment interest and attorneys' fees.

Id. at 4-7.

To avoid arrest of the Vessel by the U.S. Marshal while anchored in Marcus Hook Anchorage, see Defs.' Mot. Transfer Venue 2, the Vessel's insurance carrier issued security

in the form of a letter of undertaking to Plaintiff, id. Ex. 2, Attach. A, ECF No. 53.

On August 14, 2014, Defendant Dominique filed a Statement of Right or Interests pursuant to Supplemental Rule for Admiralty Claims C(6), affirming its ownership of the Vessel. ECF No. 15. Also on August 14, 2014, the Court ordered, per the parties' agreement, depositions of certain crewmembers of the Vessel. ECF No. 16. On September 19, 2014, Defendants filed their joint Answer, denying the allegations and asserting a number of affirmative defenses. ECF No. 21.

On October 21, 2014, Defendants filed third-party complaints against the compulsory river pilot, Kelly Sparks, and Moran Towing Corporation, the towing company that provided the tugboats on the day of the incident at issue. ECF Nos. 25, 26. These third-party complaints were later voluntarily dismissed by Defendants on January 20, 2015. ECF Nos. 29, 30.

On February 25, 2015, the Court approved the stipulated dismissal of Defendant Pleiades, ECF No. 33, and also approved a stipulation and consent order accepting that the remaining Defendants--Dominique and the Vessel--are at fault and liable to Plaintiff "for all provable and legally recoverable damages," ECF No. 34. Accordingly, the only issue remaining in the case is the proper amount of damages.

On March 19, 2015, several insurance underwriters who insured Plaintiff for business interruption and loss of business income (collectively, "Underwriters") filed a motion seeking permissive intervention under Federal Rule of Civil Procedure 24(b). ECF No. 36. The court held a hearing on the motion to intervene on June 16, 2015. By order of the same date, the Court denied the motion to intervene without prejudice, staying the case until September 14, 2015, so that Underwriters could attempt to resolve Plaintiff's insurance claim. ECF No. 46. The Court stated in its order that after the stay lifted, Underwriters may file an amended motion to intervene, attaching the operative insurance policy and stating with specificity the resolution of the claim that Plaintiff has filed with Underwriters. Id.

On September 11, 2015, Underwriters filed a renewed motion to intervene. ECF No. 49. That motion was unopposed. Accordingly, the Court granted the motion on October 29, 2015. ECF No. 55.

Discovery in this case is ongoing, and the deadline for fact discovery is February 1, 2016. See Fourth Scheduling Order, ECF No. 54.

On October 28, 2015, Defendants filed a motion for transfer of venue to the District of New Jersey, Camden Vicinage, pursuant to 28 U.S.C. § 1404(a). ECF No. 53. Plaintiff

5

filed its opposition to this motion on November 12, 2015. ECF No. 58. Thereafter, Defendants moved for leave to file a reply brief on November 16, 2015.[1] ECF No. 59. Accordingly, Defendants' motion for transfer of venue is now ripe for disposition.

**II. DEFENDANTS' MOTION FOR TRANSFER OF VENUE**

    A.    <u>Standard of Review</u>

The first issue that the Court must address is whether 28 U.S.C. § 1404(a) applies to admiralty and maritime cases. Courts have consistently applied § 1404(a) when considering the transfer of venue in an admiralty action even though the statutory language references "civil action[s]," a category which does not include admiralty and maritime cases. <u>See, e.g.</u>, <u>Cont'l Grain Co. v. The FBL-585</u>, 364 U.S. 19, 25-27 (1960) (applying § 1404 in an admiralty action). In the Federal Courts Jurisdiction and Venue Clarification Act of 2011, which is codified at 28 U.S.C. § 1390(b), Congress clarified that "admiralty disputes would be subject to the general transfer provisions in 28 U.S.C. §§ 1404-1407." H.R. Rep. No. 112-10, at 33 (2011) (citing <u>Cont'l Grain</u>, 364 U.S. 19).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district

---

[1] The Court will grant Defendants leave to file their reply brief and has considered the contents of the brief in addressing the motion to transfer.

6

court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The burden of establishing the need for transfer rests with the movant. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). In ruling on a motion for transfer, "the plaintiff's choice of venue should not be lightly disturbed." Id.

As a threshold matter, the district court must determine that the suit could have been properly filed in the transferee court. Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). If the case could have been brought initially in the transferee forum, the court moves on to determine whether the proposed transfer will be more convenient for the parties and witnesses and will be in the interest of justice. Jumara, 55 F.3d at 879.

Although three factors are enumerated in § 1404(a)-- convenience of the parties, convenience of the witnesses, and the interest of justice--the court's analysis is not limited to those factors. Id. Instead, the court may "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Id. (quoting 15

7

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3847 (2d ed. 1986)).

In Jumara v. State Farm Insurance Co., the Third Circuit identified various private and public interests that courts may consider when ruling on a § 1404(a) motion. Id. The private interests include the plaintiff's forum preference, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses, and the location of books and records. Id. The public interests include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable law in diversity cases. Id.

 B. Analysis

  1. Whether this Action Could Have Been Brought in the District of New Jersey

The Court turns first to whether the instant action could have been brought in the District of New Jersey. Because this action is based on admiralty and maritime jurisdiction under 28 U.S.C. § 1933, the statutory venue provisions of 28

8

U.S.C. § 1391(b) are inapplicable, and the traditional admiralty rules concerning venue apply instead. <u>See</u> Fed. R. Civ. P. 82 (stating "[a]n admiralty or maritime claim . . . is not a civil action for purposes of 28 U.S.C. §§ 1391-1392"); <u>see also</u> 12 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3142 (3d ed. 2015) (explaining that an admiralty or maritime claim "is not regarded as a civil action for purposes of the general venue statutes and the traditional admiralty rules of venue still apply").

Here, the Complaint claims in rem jurisdiction over the Vessel and in personam jurisdiction over the owner and manager. An in personam admiralty action can be brought against a corporation in any United States district court that can obtain personal jurisdiction over the corporation. <u>Sunbelt Corp. v. Noble, Denton & Assocs., Inc.</u>, 5 F.3d 28, 31 n.5 (3d Cir. 1993). An in rem admiralty action may be brought in any district where the property is found. <u>The Reindeer</u>, 69 U.S. 383, 403 (1864).

Defendants argue that this action could have been brought in the District of New Jersey, because the allision that is the subject matter of the suit occurred in New Jersey, and personal jurisdiction exists over Defendant Dominique in New

9

Jersey.[2] Defs.' Mot. Transfer Venue 8-9. Conversely, Plaintiff claims that because the Vessel anchored at Marcus Hook Anchorage--an area that it contends is located within the

---

[2]  Although Defendants do not specify why personal jurisdiction would exist over Defendant Dominique in New Jersey, they presumably base this argument on a theory of specific jurisdiction. Specific jurisdiction requires the plaintiff to show "that the particular cause of action sued upon arose from the defendant's activities within the forum state." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Building on Supreme Court jurisprudence, the Third Circuit has developed a three-step analysis for determining whether the exercise of specific jurisdiction is appropriate. "First, the defendant must have 'purposefully directed [its] activities' at the forum." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities.'" Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Third, the court considers "whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" Id. (alteration in original) (quoting Burger King, 471 U.S. at 476). Furthermore, "a defendant purposefully directs his activities at the forum state when he 'avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Doe v. Hesketh, 15 F. Supp. 3d 586, 593 (E.D. Pa. 2014) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958) (alteration in original)). The rationale for exercising specific jurisdiction is that a defendant accepts the cost of personal jurisdiction in a particular forum when he or she receives the benefits of acting within that forum. Int'l Shoe Co. v. Office of Unemployment Comp. & Placement, 326 U.S. 310, 319-20 (1945).

  Here, the Vessel, which is owned by Defendant Dominique, purposely traveled to Plaintiff's Pennsauken, New Jersey terminal to deliver cargo. The allision at issue in this case arose out of Plaintiff's business activities in New Jersey. Accordingly, it seems, at least at first blush, that a New Jersey court could fairly exercise personal jurisdiction over Defendant Dominique.

Eastern District of Pennsylvania's territorial waters-- immediately after the allision and at the time the letter of undertaking was issued, only a court within the Eastern District of Pennsylvania could exercise in rem jurisdiction over the Vessel. Pl.'s Opp. at 8. Plaintiff also seems to suggest that only a court within this District could enforce the letter of undertaking. Id. Plaintiff, however, fails to address the effect of Continental Grain Co. v. The Barge FBL-585, 364 U.S. 19 (1960).

In Continental Grain, the Supreme Court allowed the transfer to a more convenient forum of an action in which in rem and in personam admiralty proceedings were joined, even though the in rem action could not originally have been brought in the transferee court. 364 U.S. at 26-27. The plaintiff brought an admiralty in rem action against a barge and an in personam action against the barge owner for the negligent skinning of a barge loaded with the plaintiff's grain. Id. at 20. At the time the action was brought, the barge was located in the transferor court's district and a letter of undertaking was entered. Id. at 28-29. In personam jurisdiction could be exercised by the transferee court at the time suit was commenced, but an in rem action could not have been brought there because the barge was located in the transferor's district. The Supreme Court, however, granted the motion to transfer, reasoning that although

11

a judgment in the action would be "technically enforceable against the barge as an entity as well as its owner," an in rem proceeding is only an alternative way to bring the owner into court. Id. at 26. Said differently, "the practical economic fact of the matter is that the money paid in satisfaction of [the judgment against the barge] will have to come out of the barge owner's pocket--including the possibility of a levy upon the barge even had the cargo owner not prayed for 'personified' in rem relief." Id. Scholars have since commented that this decision "is probably best understood as resting on the Court's refusal to take seriously, in a § 1404(a) context, the archaic admiralty fiction by which an action actually against the ship owner is pretended to be against the ship." 20 Charles Alan Wright & Mary Kay Kane, Federal Practice and Procedure Deskbook § 46 (2013).

Continental Grain therefore instructs that the technical distinction of an in rem action will not bar the transfer of an admiralty case, such as this one, involving joint in rem and in personam proceedings when the interests of justice dictate such a transfer. Accordingly, Plaintiff's argument that the in rem nature of these proceedings prohibits transfer fails as a matter of law. Further, the Court has reviewed the letter

of undertaking and finds no language suggesting that Defendants waived their rights to seek transfer to another district.[3]

For these reasons, the Court finds that this action could have been brought in the District of New Jersey. The Court next turns to whether the public and private factors identified in Jumara suggest that transfer is appropriate.

### 2. Whether Transfer of this Action Would Serve the Convenience of All Involved and the Interest of Justice

Defendants argue that transfer is warranted here, because it would allow consolidation of this case with the two cases already consolidated in the District of New Jersey. Defendants say that Plaintiff's business interruption and mitigation claim "is the largest claim asserted and represents two out of the three categories of damages in this action," as well as in the consolidated New Jersey actions. Defs.' Reply Br. at 6. Accordingly, Defendants contend that there will be

---

[3] Indeed, the letter of undertaking states that it "is written entirely without prejudice to any and all rights, claims, and defenses that the M/T VOIDOMATIS or her owners, operators, and managers may have under any applicable law or contract--including but not limited to the right to assert claims or counterclaims against [Buckeye Pennsauken Terminal LLC] or other persons, any right of exoneration from or limitation of liability, and any right to assert that any claim is subject to arbitration or a forum selection clause--none of which rights, claims, or defenses is to be regarded as waived except such defenses as may be predicated solely on the fact that the vessel was not actually arrested." ECF No. 15, at Ex. A.

significant duplication of discovery and in the testimony and other proofs presented at trial in this action and the New Jersey actions. Defs.' Mot. Transfer Venue at ¶¶ 27, 28; Defs.' Reply Br. at 6, 8. For instance, Defendants claim that declining transfer "would require each fact and expert witness to testify four times on the same issue"--during two depositions and two trials. Id. at 7. In addition, Defendants suggest "there is a risk of inconsistent rulings by this Court and the District of New Jersey" that could "result in prejudice to Defendant [Dominique] and other parties." Defs.' Mot. Transfer Venue at 9.

Plaintiff counters that Defendants overstate the connection between the two separate lawsuits. Pl.'s Opp. at 4. It argues that only "some (but not a majority) of its damages are indivisible and are therefore theoretically recoverable against both sets of tortfeasors," noting that the Dock 2 damages are recoverable solely in this matter and the Dock 1 damages are recoverable solely in the New Jersey actions. Id. Moreover, Plaintiff highlights the differences in the procedural postures and operative scheduling orders in the cases. Id. In this action, a significant amount of discovery has been taken, and Defendants have stipulated to liability. Id. On the other hand, liability is "hotly contested" in the consolidated New Jersey actions, and Plaintiff anticipates "complex legal issues surrounding 'limitation'" that will require significant

discovery in that case. Id. Plaintiff therefore suggests that transfer of this action to New Jersey for consolidation would be unfair in that Plaintiff's day in court as to its Dock 2 damages would be delayed. Id. at 5. Finally, Plaintiff suggests that the risk of inconsistent rulings can be eliminated through legal devices such as res judicata or collateral estoppel.

Of the various private and public interests the court may consider when analyzing a § 1404(a) motion, Jumara, 55 F.3d at 879, the plaintiff's choice of forum is the "paramount consideration" and "should not be lightly disturbed." Shutte, 431 F.2d at 25. However, the plaintiff's choice of forum is given less deference "where the plaintiff does not reside there and none of the alleged unlawful acts occurred there." Askerneese v. NiSource, Inc., No. 12-7167, 2013 WL 1389750, at *2 (E.D. Pa. Apr. 4, 2013). The plaintiff's choice of forum is also entitled to less deference where a related action is pending in a different forum, although this principle is generally limited to instances where the action in the prospective transferee court was filed first and the subject matters of the two suits are very closely related. See, e.g., Blanning v. Tisch, 378 F. Supp. 1058, 1061 (E.D. Pa. 1974) (giving the plaintiff's choice of forum less deference where a related action was already pending in a different forum and the complaint in that action "virtually tracks the complaint here").

Likewise, "[w]here the action would likely be consolidated with the related action in the transferee district, transfer serves the interests of justice because it avoids potential inconsistent results." Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 459 (E.D. Pa. 2013); see also Ferens v. John Deere Co., 494 U.S. 516, 531 (1990) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." (quoting Cont'l Grain, 364 U.S. at 26)).

It is true, as Defendant points out, that the events that remain at issue in this litigation--namely the reconstruction and loss of use of Plaintiff's dock--happened in New Jersey and that many of the witnesses--including Plaintiff's own Pennsauken Terminal personnel, design engineers, and constructions contractors--are located in New Jersey. Defs.' Reply Br. at 7. Similarly, although federal law governs the claims in the case, New Jersey has a significant interest in the outcome of the litigation in that the allision that is the subject matter of this case occurred in New Jersey and caused harm to a business operating there. In addition, there is no basis to suggest that the state of the docket in the District of New Jersey would cause undue delay.

However, the Court is not persuaded that the instant matter and the consolidated New Jersey actions are sufficiently similar, both in terms of their substance and procedural postures, such that transfer of this action would further the interest of justice. The Court reaches this conclusion for several reasons.

First, the actions concern two separate accidents, involving two separate docks--Dock 2 in this case and Dock 1 in New Jersey--that occurred two months apart. The purportedly "indivisible damages" are only one portion of each of the cases.

Second, the contested issues, and therefore the scope of discovery, are dramatically different in the cases. Defendants have already stipulated to liability in the instant matter but not in the New Jersey actions. In addition, because the New Jersey actions were brought under the Shipowner's Limitation of Liability Act, they will necessarily involve limitation issues that will not arise in the instant matter. Although Defendants argue that the discovery schedules in the two actions differ by "a mere 120 days," Defs.' Reply Br. at 8, the additional issues present in the New Jersey actions may require dispositive motion practice or may not be trial-ready for some time.

Third, Defendants contend that Magistrate Judge Donio, who is presiding over discovery in the New Jersey actions, is

17

aware of the instant motion to transfer and has done nothing to suggest that she will not order consolidation if this Court were to grant transfer. Defs.' Reply Br. at 9. However, consolidation of actions involving "a common question of law or fact" under Federal Rule of Civil Procedure 42(a) is a matter of discretion. Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P., 785 F.3d 96, 102 (3d Cir. 2015). Judge Donio could therefore decline to consolidate, given that the overlapping business loss and mitigation damages are just one portion of each of the cases, and other portions of the cases differ significantly.

Fourth, there are tools available to the parties to avoid duplication or inconsistencies. For instance, as Plaintiff suggested during the last status and scheduling conference, the parties might "cross-caption" any discovery that needs to be done in both cases, meaning that the parties could agree that discovery taken in one case--either the Eastern District of Pennsylvania or the District of New Jersey--is applicable in the other litigation as if it had been taken in that case. Status & Scheduling Conf. Tr., Oct. 29, 2015, at 5:16-17, ECF No. 60. The potential for conflicting rulings or judgments concerning the business loss and mitigation damages can be avoided through stipulation of the parties or the application of preclusion doctrines.

18

Fifth, the Court notes that due to the physical proximity of the courthouse in Philadelphia, Pennsylvania, to that in Camden, New Jersey (approximately one mile), maintaining the case in this Court will not greatly inconvenience Defendants or witnesses. As other courts within this District have noted when considering a motion to transfer to the District of New Jersey, "the District of New Jersey is literally across the Delaware River from the Eastern District of Pennsylvania and hence this Courthouse is no more inconvenient for the [parties] and [their] witnesses than is the Courthouse in Camden, NJ." Reed v. Weeks Marine, Inc., 166 F. Supp. 2d 1052, 1058 (E.D. Pa. 2001).

Sixth, no showing has been made that the condition of the New Jersey court's docket will expedite the resolution of this matter as compared with this Court. Relatedly, the Court is concerned that transfer to the District of New Jersey could impede settlement prospects in the instant case, particularly because only damages remain contested in this matter.

On balance and after applying the public and private factors identified in Jumara, 55 F.3d at 879, Defendant-movants have failed to show that transfer would be more convenient for the parties and witnesses and would further the interest of justice. As the Court stated at the last conference, there could be developments in the case that would compel transfer at a

later date. Status & Scheduling Conf. Tr., Oct. 29, 2015, at 15:22-25. At this juncture, however, the Court finds that transfer is not warranted.

**III. CONCLUSION**

For the reasons stated above, the Court will deny Plaintiff's motion to transfer.